Thank you. May it please the Court, I'm David Pullman for Oshan Cook, the appellant. I'd like to reserve two minutes for rebuttal. Your Honors, the reason why the district court's decision on the suppression motion should be reversed is that it represents a backtracking from the progress that the Supreme Court made in the Gantt decision in retethering the search incident to arrest doctrine back to its original rationale in this once jealously guarded exception to the warrant requirement. Only a few cases have applied Gantt beyond the vehicle context to searches of closed containers, but all of those cases weigh favorably for Mr. Cook. And the most recent of those is the Casper decision, which I provided as a supplemental citation. Now, I don't know how persuasive a lower court decision from the other coast of the country is in this Court, but if it exactly was authored by Judge Rakoff, was it? It was a Virginia case, Your Honor. Tough break. But if that case, you know, holds any sway in this courtroom, then I think it strongly militates in favor of granting this appeal. I mean, in that case, you had a defendant with a violent, known violent history, known for resisting arrest. There was a hotel room full of people, whereas in this case the defendant was alone. There were only a few officers on this scene versus many in this case. The defendant was standing up at the time of the search, handcuffed in front of him, whereas Mr. Cook was handcuffed behind his back. And thereafter, Casper actually successfully broke away from the officers. True. I've got to say, I'm kind of astonished by that decision. Okay. Then I would say that that decision is was far more, that scene was far less secure than the scene in this case. Well, in this case, the district court specifically referenced and cited the officer's testimony referencing officer safety. True. That was his subjective intention. However, the district court didn't find that to be incorrect, did he? No, he did not. He what he did find was that Mr. Cook himself was secure. And what he then noticed is he really was secure in the sense that he was handcuffed and momentarily on the ground, right? Let's focus on the facts of this case, because it doesn't seem that there are any cases out there post-Gantt that are directly on point factually. So you've got a fairly unsecured scene. You've got some officers at the suspect's car. You've got a few officers around the defendant, Mr. Cook, and you've got him in an evolving situation where he's cuffed with a knapsack right next to him, correct? Correct, Your Honor, but I would disagree that if the scene was unsecure, he had been handcuffed, he was lying face down, and there were at least three officers immediately around him, as well as many more in the area. Those other suspects that you refer to had long since been arrested and had been only transferred from one vehicle to another. So I don't think they were a factor. And although it was a public residential area, the house had already been swept for a protective sweep. The entire neighborhood had been under surveillance for hours, and all of the officers who testified said this was a quiet residential area, that at the time of the search, there was nobody present other than law enforcement and Mr. Cook. So the alleged search happened shortly after the arrest, and although there was one officer who at some point stated that they were instructed to move because a crowd was gathering, that was minutes after the search. Well, if officers are not permitted to search a knapsack right next to him, a cursory search for officer safety, can you imagine a situation where officers would be permitted to search incident to arrest once a suspect is cuffed? Are you advocating the rule that once a suspect is cuffed and, quote, unquote, secured, that no further searches be conducted? I would advocate a rule that that would be the case unless there were some specific extraordinary circumstances, such as in Shakir in the Third Circuit, where that was an extremely large gentleman who was standing, not laying down face down, but standing right above the bag that was searched directly at his feet. In this case, Officer Knight actually took the bag into his own custody. He had every opportunity to walk with it as far as he needed to. And I don't believe there should be a window of Fourth Amendment free zone in every single case where an arrest is made. I think that the ---- Well, this isn't the district court didn't say. It's your open territory. District court found the subjective concern for officer safety. Well, I think that the officer stated that the purpose was for officer safety. The district court didn't define that. I mean, it wasn't as crisp and as explicit as we might wish, but the only way I can read that order from the district court is to say, but the officer's safety in this circumstance justifies it. Well, I think what the Court said is that I think it was a misinterpretation of what Shakir stands for, in that he said that it was a residential area, it was a public area, and the officer stated. He didn't say that there was a legitimate need for officer safety. He said the officer stated that was his intent. Well, that very well may be. Well, it starts with, although Cook was facedown on the ground and secured, the Court does not find that fact to be dispositive, and then goes on to the sentence with regard to officer safety, which I take to mean, otherwise, if he can't get to the bag because he's facedown and handcuffed, that might be dispositive, but not here and goes on to the sentence about residential area and officer safety. My point here is simply it's not anything goes. The Court acknowledges that the facts that he's handcuffed and he's facedown are significant, but goes on to make reference to officer safety as a justification. Right, but I don't see any situation where that wouldn't apply in an arrest. I can't imagine a circumstance where the officer couldn't say that. Well, Gant, when the guy's off in the car or in a police car someplace. I mean, when you have a clear separation, when there's no opportunity or no even unlikely, but unlikely things happen. So no unlikely possibility of the suspect or a confederate in the area getting into the bag and getting to a weapon or getting to the evidence. Well, there was no evidence of confederates in the area. No, I wasn't trying to define this case. I'm saying generally, if you're asking is there a circumstance where officer safety couldn't be used as an excuse, and I say sure. If there's nobody else in the area, if the guy is in handcuffs and in a car someplace, safely removed from the bag, then you've got no officer safety justification. But in this case, the district court cited that justification. Well, I would suggest that if the touchstone to the Fourth Amendment is reasonableness, then the touchstone to search incident to arrest is realisticness. And it struck me when I was thinking of this that in every single case where an officer arrests a person, those officers are going to have sidearms, they're going to have guns. There's always a plausible or conceivable possibility that that arrestee can somehow access the officer's sidearm, and in this case, it would have been more readily possible to access one of the officer's guns than it would have been to get to the bag. I'm not sure how that helps you say, I mean, the officer is entitled to search his holster and find that he's got a gun there. I mean, the officers aren't required to take additional risk. I understand that, Your Honor. I just think that, you know, the — it's sort of a legal fiction that every person can, you know, break their way out of handcuffs and fend off six police officers and then fight their way to a bag. That bag is in the hands of the officer at that time. Additionally, there was some strong evidence to suggest that this search never, in fact, even happened. It was never disclosed — it was never in any police report. It was never disclosed until 17 months later. The officers had to be — Kagan. Well, your problem there is that there were certain findings made by the district court, and we've got to review that for clear error. Yes, I understand. And I just think that there was at least an abuse of discretion, which is what I suggest was the standard, that in light of our — But with regard to factual findings, that breaks down to be exactly the same as clear error. Do you think there's enough here for us to say that the finding by the district court that there was this search that took place, the so-called first search, didn't happen? No, not the finding that the search took place. The finding that there was no contested issue of fact, when, in fact, the defense had laid out a long list of contestations to that search. And I'm just saying that an evidentiary hearing — But district court is allowed to make a finding in the face of conflicting evidence. So the fact that it's contested, what difference does that make? Well, I think that the circumstances called at least for an evidentiary hearing because there was so much good evidence that there was some — Well, the officers testified at the trial. The district court had an opportunity to hear what they had to say. What else would have been accomplished by an evidentiary hearing? Well, there was only two of — there were six officers present, allegedly, during this search, and only two of them testified, and the cross-examination — If he decides that they're credible, then doesn't that end it? Well, one of them even recanted his testimony from the first trial and said, I testified falsely, that I wasn't even there for that search. He had testified in detail that he participated in the search in one trial. Then in the second trial said, oh, I wasn't even there, that was a mistake. And the district court heard all of that. So I go back to the question, what would an evidentiary hearing have produced? Well, quickly going to the hearsay argument, then, Your Honor. Don't do that. We've used up your time, and we'll give you a rebuttal because we've used up your time. But I'm already focused. You've made the point about evidentiary hearing, and I'm still waiting to find out what an evidentiary hearing would have produced. Well, I think that exploring that issue in detail outside of the constraints of doing it in front of the jury would allow a completely different type of examination. I mean, there's a jury there. He cannot realistically go into the kind of depth and really challenge these officers while still maintaining his trial strategy and his sort of performance in front of the jury. So it's an entirely different circumstance. As I said, we'll still give you a minute for rebuttal because we helped you eat up your time. And we'll hear from the government. Thanks. May it please the Court. Good morning, Your Honors. Owen Mardikin for the United States. The search in this case was there. To the officers that warranted the search of that bag. The guy was secure. He was down. He was handcuffed. He was on the ground. The bag was nowhere near him. What is the, what was the reasonable safety threat that warranted that search? Well, the exact same threat as the one that the Court recognized in Shakir. Tell me in this case what it was. There were two officers who were in the process of arresting and handcuffing a defendant in a volatile situation. What was volatile once he was down on the ground handcuffed? What's volatile is the officers don't know what's going to happen next. They don't have the virtue of hindsight to know that this bag had drugs in it and not a weapon or that this defendant was going to simply submit and allow himself to be let away. Are your, so the question that was in effect implicitly asked in your adversary's argument, is it your position at any time officers arrest someone, handcuff them, get them down on the ground, secure them, as was specifically found in this case, that they can then search some property that is not even in the physical possession any longer of the defendant, but is in the possession now of the officers? There's no limits to that. That we just forget about the Fourth Amendment. No. That's not my position.  Good answer. Thank you, Your Honor. Yes, well, if you had answered it anything other than that, presumably the malpractice insurance would have to be very high. The, so what's the line you draw? Well, the line is the one that this Court drew in Camus, which is, one, is the object within the immediate control of the defendant at the time of the arrest, which is a conceded point here. Two, is the search roughly contemporaneous. Not at the time of the search. Correct. That's just the first part of the test. Then at the time of the search. But what's the relevance of that to this case? None, right, because it wasn't in his possession at the time of the search. Correct. But the second part of the test is, was the search roughly contemporaneous with the arrest and spatially proximate, which in this case are both. Well, we have to define those in terms of the purpose of the Fourth Amendment and the purpose of the exception. You know, words like proximate are notoriously open to innumerable definitions. And so we have to look first at the constitutional provision, which has no exceptions. And then we look at the exceptions created by the courts of incident to arrest. And the purpose is to protect the safety of the officer, is it not? It is. Yes. So what was the threat to the safety of the officer in this case? Well, the officer knew that there was a bag that had been on Mr. Cook's shoulder, but was now right next to him on the ground as he was being arrested. And the officer had no idea what was in that bag and couldn't simply assume that because of Mr. Cook's demeanor or the way he looked, and there's no evidence about any of that in the record, that the situation was completely safe. He has to secure that area and be sure that what that bag has in it does not present a threat to officer safety. He can't make those assumptions because of the great risk that he makes it the wrong way. Now, I — But let's assume the bag includes a weapon. The — how could it possibly pose a threat in this situation? Well, because the officers don't know how the situation is going to turn out. They never know, and which is why the Court admires — So on that theory, then there's — then every time there is an arrest, since no one knows how it's going to come out, anything can happen, the world is full of uncertainty, you can have a search, the bag's 20 feet away, if the guy is handcuffed and hog-tied, it doesn't matter because you don't know how it's going to turn out. Is that your position? No, because — Where are you drawing the line? Where Camus did. Is it roughly contemporaneous, temporally? Is it close enough spatially that this is an area where someone might reach in order to effect his escape, as the Supreme Court said in Chamel? And is there something that happens after the arrest that would make the fact of the search unreasonable, as in Myers, where the bag is sitting next to the defendant, but then the officer just leaves the room, interviews someone else, and comes back a long time later to actually search the bag? And Myers is instructive because the Court said, had that officer not left the room, had the officer left — searched that bag right then when the defendant was being arrested, the result might have been different, and that, of course, is the situation that we have here. All right. Let me ask you a different question. And why was there not an evidentiary hearing? Was — did the Court give a reason? Well, there had been two trials. The Court heard from the witnesses. Yes, but the point your adversary was making towards the end is that the defendant could testify at a suppression hearing without fear of waiving his right not to testify at trial. So you don't hear from the other side in the way that you would in a suppression hearing. Well, because the defendant raised no contested issue of fact from his testimony, what usually happens in the motion to suppress in that context is that the defendant puts in a declaration saying, you know, I defended. There was no declaration here? No. There was no — it wasn't raised. So the Court had to go on the factual issues as it felt it could resolve them, which it did. And, of course, the inevitable discovery doctrine, I think, applies here as well, because there was evidence that as a routine matter of booking, this would have been searched. But that's a DEA routine procedure, right? Yes. It was a DEA agent, and was he booked in the local jail instead? Yes, but I think the issue is not booking the defendant into the jail. It's booking the backpack into evidence. No, no, I understand that, but if I recall correctly, the declaration that you submitted on inevitable discovery indicates that it was routine for the DEA during the booking process to inventory the contents of the backpack. Is there any evidence in the record below showing that was also routine for the local jails to inventory the contents of the backpack? Did you put that into evidence? No, but the — he's talking about booking the backpack into the DEA's evidence locker, not booking the defendant into the local jail. So I think maybe there was just a misunderstanding by the defendant about that. I see. So the defendant was taken to the local jail, but the DEA then books the backpack into DEA evidence locker? Yes. Yes. So I think that's what he's talking about. I'd like to speak briefly about the hearsay issue, because I think there's an important — there's a lot of emphasis placed on this Gomez case from the Second Circuit, and there's a very key distinction here, which is perhaps not clear, so clear from the papers, but is from the record, which is that the defendant very much wanted in evidence this testimony about the call to the supplier, because the defendant's strategy, which actually is borne out in trial, is the defendant wanted to say, yes, Edmonds was going to call his supplier, but the call went to Anita. So, ergo, Anita must be the supplier, not my client. So it was very important for the defendant to say, I want that evidence, and I have no problem with that, because he makes that argument in opening, and then on cross, but he wanted to draw the line at the actual number, because obviously, if the number came in, it would disprove that whole argument, because the number was then matched with the defendant's phone. So the reason that issue is on plain error review is because the defendant wanted that evidence, and used it as, quote, exculpatory evidence in his opening statement. That's at page 2 of the supplemental excerpt of record. But in sum on that evidence, there was so much evidence tying Mr. Cook to these drugs that the pieces that of alleged hearsay testimony that he relies on simply don't outweigh the ample evidence of his guilt. So in sum, I argue that the search was legal in this case, and the evidence was neither plain error nor an abuse of discretion, and would ask the Court to affirm. Thank you. Roberts, thank you. Mr. Pullman. Pullman, thank you, Your Honor. There was a declaration by the defendant in this case, and he did say that there was no cursory search of the backpack. This very court in Maddox said, mere temporal or spatial proximity of the search to the arrest does not justify a search. There must be some threat or exigency. There is no realistic possibility that someone who is lying on their belly with three officers immediately upon him and three more within a few feet, handcuffed behind his back, could escape from that situation and get into that backpack. As far as the inevitable discovery, there's a minimal showing required there that there was some inventory procedure, a written inventory procedure, that details well, how do you search a backpack? Do you inventory it as a whole, or do you inventory the parts? And moreover, he was booked into. The evidence is that he was booked into the San Mateo County Jail, not a DEA facility, and there's no evidence as to what their inventory policy was. As far as the hearsay, they played his name. They played his name, and that was objected to. They played his -- they gave his phone number, and that was also objected to. So that's the kind of bell that cannot be unrung by an instruction to disregard what you just heard. And I thank you for the time. Roberts, we thank you. We thank both counsel for your helpful arguments. The case just argued is submitted, and we move to Sublet v. Robertson.
judges: Rakoff, Clifton, Nguyen